NOT DESIGNATED FOR PUBLICATION

No. 124,959

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL ROSS SECK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; JOSEPH L. MCCARVILLE III, judge. Submitted without oral argument. Opinion filed November 8, 2024. Convictions affirmed, sentence vacated, and case remanded with directions.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas R. Stanton*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., MALONE and SCHROEDER, JJ.

PER CURIAM:  Samuel Ross Seck appeals following his convictions by a jury of one count of sexual exploitation of a child and one count of failure to register as a sex offender. Seck claims:  (1) the prosecutor's closing argument misstated the State's burden to prove the culpable mental state to commit sexual exploitation of a child; (2) the district court erred by not instructing the jury on the statutory definition of the culpable mental state; (3) the cumulative effect of these two errors denied him a fair trial; (4) the district court erred by sentencing him as an aggravated habitual sex offender; and (5) the district

court erred in sentencing Seck because the State did not charge him with committing a second or more "sexually violent" offense. We find no error affecting Seck's convictions, but we vacate Seck's sentence and remand for the district court to sentence him as a persistent sex offender instead of as an aggravated habitual sex offender.

FACTUAL AND PROCEDURAL BACKGROUND

Because of convictions in 2012 and 2017, Seck is required to register as a sex offender under the Kansas Offender Registration Act (KORA). In January 2020, while Seck was still on parole for the 2017 case, the Reno County Sheriff's Department received a tip that Seck was using an unauthorized Facebook account, which violated the conditions of his parole. Seck had not reported the account, nor his new cellphone number—a registration violation under KORA. Deputy Matt Vieyra did a quick public search and located Seck's Facebook account, which displayed pictures of Seck.

After locating Seck's Facebook account and printing out some pages from it, Vieyra contacted one of Seck's parole officers, Ernesto Roman. Vieyra and Roman made plans for Vieyra to come to Seck's next scheduled offender registration appointment. Vieyra interviewed Seck, who admitted having the Facebook account, an unregistered email address, and a cellphone number that he had not disclosed to his parole officers. He claimed that his ex-girlfriend had created the Facebook account, but he admitted using it himself. Following the interview, Seck's parole officers conducted their own interview and eventually arrested Seck. During their conversation, Seck initially stated that he only had a flip cellphone, but when the officers told him that they would search his truck, he admitted that he also had an unreported smartphone that he had recently found.

Seck told the officers they would find the cellphone in the middle console of his truck. He also stated that he had "found some pictures" on the cellphone that concerned him, and that he was planning to turn the cellphone over to his parole officer. Seck stated

2

that the pictures he found on the cellphone were of young girls; he later told officers that the girls in the pictures were nude and posed in different suggestive positions. The officers quickly located two cellphones during their search of Seck's truck. Once the officers found the cellphones, Seck admitted to viewing pornography on them, which was another violation of the conditions of his parole.

Later, a detective performed an extraction on Seck's cellphones to look for potential images of sexual exploitation of minors, which revealed many illicit pictures. The detective noted that such images are not "something you can accidentally download. You would need to go out there and search for it on the internet." He ultimately found 216 images on Seck's cellphone displaying children posing in sexual positions with no or little clothes on. Among these images were also many pictures of Seck.

The State charged Seck with one count of sexual exploitation of a child based on the photographs found on his cellphone and one count of failure to register as a sex offender. Before trial, the State moved to admit evidence of Seck's other crimes and wrongs—his prior sex offenses—under K.S.A. 60-455(d), arguing they showed that Seck had the images on his cellphone with the intent to arouse his sexual desires. The district court granted the State's motion. During Seck's trial, a detective testified about Seck's 2017 case, in which he had also been found in possession of child pornography on his cellphone. Seck did not testify at trial. In closing argument, his attorney suggested that Seck did not knowingly possess the child pornography on his cellphone and did not have the necessary intent to commit the crimes. The jury found Seck guilty as charged.

At sentencing, the district court found Seck to be an aggravated habitual sex offender because of his two prior convictions for sexually violent crimes and sentenced him to life in prison without the possibility of parole for sexual exploitation of a child. The district court imposed a presumptive sentence under the sentencing guidelines for failure to register as a sex offender. Seck timely appealed the district court's judgment.

DID THE STATE COMMIT PROSECUTORIAL ERROR DURING CLOSING ARGUMENT?

Seck contends the prosecutor misstated the law during closing argument on the culpable mental state that the State needed to prove sexual exploitation of a child. Seck contends the prosecutor told the jury that the State only had to show that Seck possessed illicit images, not that he *knowingly* did so. The State responds that Seck mischaracterizes the prosecutor's closing argument and contends the prosecutor correctly stated the law.

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman*[ *v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted]." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

Seck argues that the prosecutor misstated the law by telling the jury that to prove the element of possession, the State only had to show the illicit images were on his cellphone, or that Seck had viewed those images—not that he knowingly possessed the images. Although Seck did not object to the prosecutor's statement, no contemporaneous objection is necessary to preserve this court's review of a claim of prosecutorial error in closing argument. *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017).

To prove the crime of sexual exploitation of a child under K.S.A. 21-5510(a)(2), the State must demonstrate, beyond a reasonable doubt, that the defendant "possess[ed] any visual depiction of a child under 18 years of age shown or heard engaging in sexually

4

explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender or any other person." See PIK Crim. 4th 55.180 (2017 Supp.) (sexual exploitation of a child). "'Possession'" is defined as "*knowingly* having joint or exclusive control over an item or knowingly keeping some item in a place where the person has some measure of access and right of control." (Emphasis added.) K.S.A. 21-5111(v). "Control" is not defined by statute, but Black's Law Dictionary defines it as "[t]o exercise power or influence over." Black's Law Dictionary 416 (11th ed. 2019).

Seck points to several isolated portions of the prosecutor's closing argument to support his contention that the prosecutor misstated the law. As a starting point, Seck is correct that the prosecutor argued that the jury should consider each of the jury instructions—without adding or subtracting any elements—and she asserted that the State had proved every element beyond a reasonable doubt. These comments were not a misstatement of the law. Then, the prosecutor began to walk the jury through the elements of the sexual exploitation charge set forth in the jury instruction. She stated,

> "The first element is that he possessed a visual depiction in which a person is shown engaging in sexually explicit conduct and in the elements there's some definitions and so one of the definitions you'll probably need to look at is in answering did he possess is what the definition is of possession. *So possession, you'll read in the instructions, means having joint or exclusive control over an item with knowledge and the intent to have such control or knowingly keeping some item in a place where the person has some access and right of control. So you have to ask yourself, did the state prove beyond a reasonable doubt that Samuel Seck possessed the visual depictions*, and the state contends that you heard not only from state's witnesses but you actually heard testimony through Samuel Seck himself where he admitted to the parole agents that he had seen the [cell]phone with the images at his house." (Emphasis added.)

After explicitly stating the law on the level of possession the State needed to prove, the prosecutor argued that Seck's explanation that he did not download the

sexually explicit images on his cellphone and that he would turn in the cellphone to his parole officer was not credible. She noted that Seck admitted he knew the content of the illicit pictures on the cellphone (explicitly stating that several images depicted young children), and that the cellphone was in his truck. The prosecutor argued,

"[Seck] may have thought that what he was doing was giving some sort of explanation that may have avoided him being criminally responsible, what he did is he admitted to not only possessing the [cell]phone at his house but he told them that [cell]phone with the naked images is currently in my truck and, lo and behold, you heard testimony that after he was arrested everyone goes down to the truck and what was there? You had the two [cell]phones and so as far as the definition of possession, it is clear that the defendant possessed the [cell]phones even though he—when they were found they were removed from the truck he is the one that told everyone they were going to be there and so you don't have to leave your common sense at the door."

In his brief, Seck cites the prosecutor's following comment as evidence of her alleged misstatement of the law:

"The truth is what was extracted from the [cell]phones and it's very hard on some point or at some time to try to make the story match the evidence when the evidence is never going to change.
    "Now, there were extractors as to whether or not the detectives or the special agents knew when the images were downloaded. That's adding an element. You'll recognize that elements of sexual exploitation don't say anything that the defendant took the photos or he downloaded the photos or manufactured the photos."

While the prosecutor's statement is perhaps not a model of clarity, by no means does it appear that she was misstating the law on Seck's culpable mental state. When reading the challenged comment in the context of her entire argument, it appears the prosecutor was simply stating that the State did not need to prove how the illicit images were placed on Seck's cellphone. In other words, the prosecutor stated at one point that

6

the State did not need to prove how the images were placed on Seck's cellphone or that he individually downloaded the images on his cellphone—the State only needed to prove that Seck knowingly possessed the images. This assertion was not a misstatement of the law.

The prosecutor never argued, as Seck alleges, that Seck's mere possession of the cellphone on which child pornography was found satisfied the State's burden. The prosecutor noted that the State was required to prove every element of the crime beyond a reasonable doubt, asked the jury to consider every element included in the jury instructions, provided a reasonable summary of the evidence the State had presented, and argued that the State's evidence was more credible than Seck's explanations for his actions. Seck's argument relies on a mischaracterization of the prosecutor's closing argument; at no point did she try to lower the State's burden to show a knowing act of possession of sexually explicit images of minors. Because we find that the prosecutor's comments were within the wide latitude afforded prosecutors during closing argument, we need not address whether Seck was prejudiced by the comments. We conclude the State did not commit prosecutorial error during closing argument.

DID THE DISTRICT COURT ERR IN INSTRUCTING THE JURY?

Next, Seck argues that the district court erred by failing to define the culpable mental state of "knowingly" in its instructions to the jury. Seck concedes that he did not request or object to the omission of such an instruction at trial. The State appears to acknowledge that such an instruction would have been legally and factually appropriate but maintains that the failure to include it does not amount to clear error.

This court reviews jury instruction issues under a four-step framework:

"(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in [*State v.*] *Ward*[, 292 Kan. 541, 565, 256 P.3d 801 (2011)]." *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

Because Seck concedes that he did not object to the failure to include the instruction at trial, this court will only reverse for clear error—that is, if it is firmly convinced that the jury would have reached a different verdict if the instructional error had not occurred. And Seck has the burden to establish clear error. See *State v. Martinez*, 317 Kan. 151, 162, 527 P.3d 531 (2023).

Seck asserts that the district court should have instructed the jury on the definition of "knowingly" consistent with the definition in PIK Crim. 4th 52.010 (2021 Supp.). He argues that although K.S.A. 21-5510(a)(2) does not set forth a culpable mental state for the possession element, the statutory definition of possession includes the mental state knowingly and thus the term knowingly should have been defined for the jury. The district court instructed the jury:

"In Count One, the defendant is charged with Sexual Exploitation of a Child. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant possessed a visual depiction in which a person is shown engaging in sexually explicit conduct.

8

"2. The defendant did so with the intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the defendant or another person.

"3. The person shown engaging in sexually explicit conduct was less than 18 years old. The State need not prove the defendant knew the child's age.

"4. This act occurred on or about the 16th day of January, 2020, in Reno County, Kansas."

This instruction mirrors the pattern instruction on sexual exploitation of a child. See PIK Crim. 4th 55.180. As both parties note, the instruction omits the culpable mental state required for the offense. Even when the definition of a crime does not prescribe a culpable mental state, a district court must instruct on the culpable mental state necessary for a conviction unless the statutory definition "plainly dispenses with any mental element." K.S.A. 21-5202(d). Even though the sexual exploitation of a child statute does not mention a knowledge requirement, the State needed to prove that Seck *knowingly* possessed the images. Because the State was required to prove a knowing act of possession, a culpable mental state instruction was legally and factually appropriate.

Seck argues that a definitional instruction of the culpable mental state "would have focused the jury on the mental state required for the act of possession. It would have told the jury that a defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about . . . ." He contends the jury would have reached a different verdict had it been instructed on the statutory definition of "knowingly."

Seck cannot establish that the district court's failure to give an instruction on the culpable mental state constitutes a clear error. While a mental state instruction would have been both legally and factually appropriate, this court has refused to find error where a district court fails to define the terms "intentionally" or "knowingly" in jury instructions. *State v. Ballantyne*, 64 Kan. App. 2d 14, 51-52, 543 P.3d 1152 (2024). As the *Ballantyne* court explained, "[t]his is because '[a] term which is widely used and

9

which is readily comprehensible need not have a defining instruction.'" 64 Kan. App. 2d at 51 (quoting *State v. Norris*, 226 Kan. 90, Syl. ¶ 4, 595 P.2d 1110 [1979]).

"A court need only define a word if its common lay definition differs from the legal definition. 'Knowingly' and 'intentionally' do not fall into this category. They are '"widely used words"' and '"readily comprehensible by individuals of common intelligence."' [Citations omitted.]" 64 Kan. App. 2d at 51. This court has reached the same conclusion in many unpublished opinions. See, e.g., *State v. Collins*, No. 121,112, 2021 WL 936048, at *6 (Kan. App. 2021) (unpublished opinion); *State v. Bacon*, No. 114,951, 2017 WL 2403355, at *9-10 (Kan. App. 2017) (unpublished opinion); *State v. Garrett*, No. 114,191, 2017 WL 2304450, at *3-4 (Kan. App. 2017) (unpublished opinion); *State v. Hanks*, No. 114,640, 2016 WL 4585620, at *4 (Kan. App. 2016) (unpublished opinion).

Beyond the fact that the term knowingly could be readily understood, the weight of the evidence against Seck weighs against a finding of clear error. Seck admitted that he had control over his cellphone and that he knew the images on that cellphone depicted nude pictures of children. Considering the strength of this evidence, we are not firmly convinced that the jury would have reached a different verdict if the court had provided the jury with a definition of the term "knowingly." We conclude the district court's failure to define "knowingly" in a separate instruction was not clearly erroneous.

### DID CUMULATIVE ERROR DEPRIVE SECK A FAIR TRIAL?

Seck contends the cumulative effect of the alleged prosecutorial error and instruction error deprived him of a fair trial. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Alfaro-Valleda*, 314 Kan. 526, 551, 502 P.3d 66 (2022). But

10

the cumulative error doctrine does not apply when there is no error or only one error. *State v. Sieg*, 315 Kan. 526, 536, 509 P.3d 535 (2022). Because Seck has not apprised this court of any trial errors, his argument fails. See *State v. Waldshmidt*, 318 Kan. 633, Syl. ¶ 9, 546 P.3d 716 (2024) (holding that unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis).

### DID THE DISTRICT COURT ERR BY SENTENCING SECK AS AN AGGRAVATED HABITUAL SEX OFFENDER, INSTEAD OF AS A PERSISTENT SEX OFFENDER?

Seck argues that his sentence is illegal because he qualified as both an "aggravated habitual sex offender" under K.S.A. 21-6626(c)(1) and as a "persistent sex offender" under K.S.A. 21-6804(j)(2). Seck asserts that under the rule of lenity, when two statutes are equally applicable, the court must apply the statutory provision that is more favorable to the accused. He cites *State v. Greene*, 299 Kan. 1087, 1098-99, 329 P.3d 450 (2014), and *State v. Turner*, 293 Kan. 1085, Syl. ¶ 4, 272 P.3d 19 (2012), to support his argument. The State maintains that *Greene* and *Turner* apply only to cases where a defendant is convicted of rape and has prior convictions for rape. The State also asserts that Seck's position would render K.S.A. 21-6626(c) meaningless.

Seck did not raise this issue in district court. But if Seck's argument is correct, he is serving an illegal sentence under K.S.A. 22-3504. The court may correct an illegal sentence at any time while the defendant is serving the sentence. K.S.A. 22-3504(a).

We exercise unlimited review over statutory interpretation. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). When construing statutes, courts must avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Keel*, 302 Kan. 560, 574, 357 P.3d 251

(2015). Generally, criminal statutes are strictly construed in favor of the accused, but this rule is subordinate to the rule that the interpretation of a statute must be reasonable and give effect to intent of the law. *State v. Gensler*, 308 Kan. 674, 680, 423 P.3d 488 (2018). A specific statute controls over a general statute. *State v. Kinder*, 307 Kan. 237, 241, 408 P.3d 114 (2018). And the rule of lenity arises only when there is any reasonable doubt of the statute's meaning. *State v. Williams*, 303 Kan. 750, 760, 368 P.3d 1065 (2016).

Turning to the relevant statutes, an "'[a]ggravated habitual sex offender'" is a person who "(A) Has been convicted in this state of a sexually violent crime, as described in subsection (c)(2)(A) through (c)(2)(J) or (c)(2)(L); and (B) prior to the conviction of the felony under subparagraph (A), has been convicted of two or more sexually violent crimes." K.S.A. 21-6626(c)(1). K.S.A. 21-6626(a) states that an aggravated habitual sex offender shall be sentenced to imprisonment for life without the possibility of parole.

K.S.A. 21-6804(j)(2) defines a "persistent sex offender" as any person who:

"(A)(i) Has been convicted in this state of a sexually violent crime, as defined in K.S.A. 22-3717, and amendments thereto; and

(ii) at the time of the conviction under clause (i) has at least one conviction for a sexually violent crime, as defined in K.S.A. 22-3717, and amendments thereto, in this state or comparable felony under the laws of another state, the federal government or a foreign government; or

"(B)(i) has been convicted of rape, as defined in K.S.A. 21-3502, prior to its repeal, or K.S.A. 21-5503, and amendments thereto; and

(ii) at the time of the conviction under subsection (i) has at least one conviction for rape in this state or comparable felony under the laws of another state, the federal government or a foreign government.

"(3) Except as provided in subsection (j)(2)(B), the provisions of this subsection shall not apply to any person whose current convicted crime is a severity level 1 or 2 felony."

12

K.S.A. 21-6804(j)(1) provides that "[t]he sentence for any persistent sex offender whose current convicted crime carries a presumptive term of imprisonment shall be double the maximum duration of the presumptive imprisonment term."

Seck's two prior convictions for attempted sexual exploitation of a child in 2012 and 2017 qualify as "'[s]exually violent crimes'" under the relevant statutory provisions. See K.S.A. 21-6626(c)(2)(F), (M); K.S.A. 22-3717(d)(5)(H), (O). Thus, Seck's current conviction qualifies him as both an aggravated habitual sex offender under K.S.A. 21-6626(c)(1) and as a persistent sex offender under K.S.A. 21-6804(j)(2).

Seck contends, under *Greene* and *Turner*, that the district court should have sentenced him as a persistent sex offender because under the rule of lenity, when two statutes are equally applicable, the court must follow the statutory provision that is more favorable to the accused. In *Turner*, 293 Kan. at 1086-91, the Supreme Court examined the application of the aggravated habitual sex offender statute and the persistent offender statute when a defendant has been convicted of on-grid sexually violent crimes while having at least two prior sexually violent crime convictions—Seck's exact situation.

Upon examining the statutes, the *Turner* court found that neither statute was more specific and it held that under the rule of lenity the district court needed to sentence a defendant who qualified under both statutes under the more lenient one. 293 Kan. at 1090-91. In comparing the language of the statutes, the Supreme Court explained:

> "Under both definitions the defendant must be convicted of a sexually violent crime as defined in K.S.A. 22-3717. In addition, in order to be sentenced as a persistent sex offender, the defendant must have previously had 'at least one conviction' for rape or some other specific sex-related crime. K.S.A. 21-4704(j)(2). In order to be sentenced as an aggravated habitual sex offender, the defendant must have previously had 'at least two prior conviction events' for specific sex-related crimes. K.S.A. 21-4642(c)(1). The difference between the definitions in this regard is slight. Both have no upper limit for

13

prior convictions, but the aggravated habitual sex offender *must* have at least two prior convictions, while the persistent sex offender qualifies with just one. The legislature did not, however, choose to distinguish the status of the two offenders precisely. The legislature could have drafted the persistent offender statute to be limited to those offenders who had one and only one prior conviction for a sex crime, but it elected instead to use the words 'at least one,' indicating that the statute also applies to an offender who has two or more prior convictions for sex crimes. See K.S.A. 21-4704(j)(2). This results in a nearly exact overlap between the two statutes. While the minimum number of requisite prior convictions makes these statutes distinguishable, it does not necessarily follow that one is more specific than the other." 293 Kan. at 1090.

The *Greene* court, presented with nearly identical facts, followed the same rationale, remanding for resentencing to apply the more lenient statute. 299 Kan. 1098-99.

The State asserts that these holdings are inapplicable because the defendants in both *Turner* and *Greene* were convicted of rape and had prior convictions for rape, while Seck's prior convictions are for attempted sexual exploitation of a child. As a result, the applicable section of the persistent sexual offender statute in Seck's case is subsection (j)(2)(A) of K.S.A. 21-6804, and not subsection (j)(2)(B). Thus, the State contends that K.S.A. 21-6626(c), the aggravated habitual sex offender provision, controls because it is more specific than K.S.A. 21-6804(j), the persistent sex offender provision, because of the higher number of prior convictions required to elevate the sentence.

But the *Turner* court's analysis was not limited in the way the State suggests. While the analysis dealt with the defendants who had recurring rape convictions, the court addressed the specificity of the relevant parts of the statute that are at issue here:

"Even if we could conclude that the higher number of prior convictions required by K.S.A. 21-4642(c) elevates its level of specificity over K.S.A. 21-4704(j), there are other reasons for construing K.S.A. 21-4704 to be the more specific statute, particularly in the context of Turner's present rape convictions. Even if a defendant has at least one

previous conviction for a sexually violent crime, K.S.A. 21-4704 does not apply if the current crime of conviction is rape and unless the defendant has one previous conviction for rape. Because Turner's present crimes of conviction include two counts of rape, and he has two previous convictions for rape, the exception contained in K.S.A. 21-4704(j)(3) applies. K.S.A. 21-4642, on the other hand, is not specific to individuals who are convicted of rape and who have prior rape convictions. Instead, it can apply generally to offenders convicted of any 1 of 10 different 'sexually violent crimes,' such as indecent liberties with a child or aggravated sexual battery. From this perspective, K.S.A. 21-4704 is the more specific statute and should control with respect to the sentences imposed for the two counts of rape.

"The rape for which Turner was convicted is a severity level 1 person felony. He therefore qualifies as a persistent sex offender under K.S.A. 21-4704(j)(2)(B), but not under 21-4704(j)(2)(A). K.S.A. 21-4704(j)(2)(B) is specific to the crime of rape: it applies narrowly to an individual whose present crime of conviction is rape and who had at least one prior conviction for rape. The legislature saw fit to specify convictions for rape as a special subcategory for persistent sex offenders, even though defendants under paragraph (B) also qualify under paragraph (A). Courts are to presume that the legislature does not intend to enact meaningless or redundant legislation. *Cochran*[ *v. Kansas Dept. of Agriculture*], 291 Kan. [898,] 903[, 249 P.3d 434 (2011)]. The fact that the legislature singled out the crime of rape under K.S.A. 21-4704(j)(2)(B) suggests that it is more specific than K.S.A. 21-4642.

"Resolution of this issue turns on which statute is more specific. Because we cannot apply consistent rules of statutory construction to determine which is more specific, we are unable to ascertain which statute the legislature intended the courts to apply under the circumstances of this case. Any reasonable doubt about the meaning of criminal statutes resulting from the existence of conflicting statutory provisions must be decided in favor of anyone who is subjected to those criminal statutes. [*State v.*] *Horn*, 288 Kan. [690,] 693[, 206 P.3d 526 (2009)]. The rule of lenity requires that Turner be sentenced under K.S.A. 21-4704(j), and this case must be remanded to the district court with directions to impose the lesser sentence." *Turner*, 293 Kan. at 1090-91.

And, as a prior panel of this court addressing the same argument the State raises in this case concluded, the language of the current statutes simply does not display that

15

either is more specific than the other. In *State v. Jones*, No. 119,764, 2020 WL 3481527, at *13 (Kan. App. 2020) (unpublished opinion), *aff'd in part, rev'd in part* 313 Kan. 917, 492 P.3d 433 (2021), a case in which the defendant was convicted of sexual exploitation of a child, this court stated:

> "True, *Turner* and *Greene* dealt with current rape convictions following prior rape convictions, a scenario specifically addressed by subsection (B) of the persistent sex offender statutes. See K.S.A. 21-4704(j)(2)(B), now K.S.A. 2019 Supp. 21-6804(j)(2)(B). Yet even given those specific facts and that specifically applicable subsection, the Kansas Supreme Court did not hold that the persistent sex offender statute was more specific than the aggravated sex offender statute. Instead, it relied on the rule of lenity.

> "Jones' conviction falls within subsection A, not B, of the persistent sex offender statute. K.S.A. 2014 Supp. 21-6804(j)(2)(A), Subsection A applies to all 15 of the sexually violent crimes defined in K.S.A. 2014 Supp. 22-3717(d)(5), while subsection B applies only to recurring rape convictions. K.S.A. 2014 Supp. 21-6804(j)(2)(B). We cannot logically find that K.S.A. 2014 Supp. 21-6804(j)(2)(A) is more specific than the aggravated sex offender statute, K.S.A. 2014 Supp. 21-6626(c), when the Kansas Supreme Court did not find the narrower, more specific K.S.A. 2014 Supp. 21-6804(j)(2)(B) to be so.

> "Nor can we find the aggravated sex offender statute, K.S.A. 2014 Supp. 21-6626(c), to be more specific than K.S.A. 2014 Supp. 21-6804(j)(2)(A), as the State invites us to. The State's sole argument is that *Turner* recognized a viable argument that when 'the (j)(2)(B) rape provision does not apply, "the higher number of prior convictions required by [K.S.A. 21-6626(c)] elevates its level of specificity over [K.S.A. 21-6804(j).]"' But that argument takes *Turner*'s language out of context. See above ('Even if we could conclude that the higher number of prior convictions required by K.S.A. 21-4642[c] elevates its level of specificity over K.S.A. 21-4704[j], there are other reasons for construing K.S.A. 21-4704 to be the more specific statute, particularly in the context of Turner's present rape convictions.' 293 Kan. at 1090). Because we cannot determine which statute is more specific, we default to the rule of lenity." *Jones*, 2020 WL 3481527, at *13.

Although the *Jones* panel was reversed on other grounds, the Kansas Supreme Court did not address the panel's analysis of this particular issue. We find the *Jones* panel's analysis on this issue persuasive.

Finally, the State asserts that this result renders K.S.A. 21-6626(c) meaningless, as "there would be no scenario under which a defendant could be sentenced as an aggravated habitual sex offender." But that assertion is incorrect. See *State v. Campbell*, No. 113,005, 2016 WL 1274482, at *5-6 (Kan. App. 2016) (unpublished opinion) (finding the persistent sex offender statute does not apply when a defendant is convicted of an off-grid crime). Had Seck's current conviction been for an off-grid crime, we would uphold his sentence as an aggravated habitual sex offender under K.S.A. 21-6626(c).

Although *Turner* and *Greene* were decided when the persistent sex offender and aggravated habitual sex offender statutes were K.S.A. 21-4704(j) and K.S.A. 21-4642, the statutory language has remained substantively unchanged since these decisions. Compare K.S.A. 21-6804(j) to K.S.A. 21-4704(j); compare also K.S.A. 21-6626 to K.S.A. 21-4642. Because the statutes at issue have been recodified but have not been amended to avoid the judicial construction in *Turner* and *Greene*, we should presume the Legislature agreed with that judicial construction. See *State v. Nguyen*, 304 Kan. 420, 425-26, 372 P.3d 1142 (2016) (when the Legislature fails to modify a statute to avoid a standing judicial construction of the statute, courts presume the Legislature agreed with that judicial construction). Because both K.S.A. 21-6626(c)(1) and K.S.A. 21-6804(j)(2) apply equally and neither is more specific, *Greene* and *Turner* require that the rule of lenity be applied, and Seck's sentence be vacated. Thus, we vacate Seck's sentence and remand for the district court to sentence him as a persistent sex offender, instead of as an aggravated habitual sex offender, for his conviction of sexual exploitation of a child.

17

## DID THE STATE ERR IN SENTENCING SECK BECAUSE IT WAS LIMITED TO THE INFORMATION IN THE STATE'S COMPLAINT?

Finally, Seck argues that his sentencing should have been limited by the specific language of the charge in the complaint. He asserts that because the complaint did not charge him with a second or more sexually violent offense, it failed to notify him that he could be subject to sentencing as an aggravated habitual sex offender and thereby violated his due process rights. He thus contends that he could be sentenced only for a level 5 felony as set forth under K.S.A. 21-5510(b)(1)(A) in the charging document.

Seck acknowledges that he is raising this issue for the first time on appeal. While he recites some exceptions to the general rule barring claims raised for the first time on appeal, he does not explain why the issue was not raised before the district court, nor why this court should reach it. The State asserts that we should decline to reach the issue because of Seck's minimal effort to explain why the issue should be reached. Alternatively, the State argues that Seck's claim has no merit.

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021). And we observe that the definition of an illegal sentence under K.S.A. 22-3504(c)(1) does not include a claim that the sentence violates a constitutional provision. *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016). Thus, Seck cannot assert that if his claim is correct, he is serving an illegal sentence that the court may correct at any time while he is serving the sentence under K.S.A. 22-3504(a).

We agree with the State that although Seck recites some exceptions to the general rule barring claims raised for the first time on appeal, he does not explain *why* the issue is properly before the court as required by Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the

18

Kansas Supreme Court warned 10 years ago that in the future Supreme Court Rule 6.02(a)(5) would be strictly enforced, and litigants who violated this rule risked a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. And finally, we observe that "a 'decision to review an unpreserved claim under an exception is a prudential one.' Even if an exception may apply, we are under no obligation to review the claim. [Citations omitted.]" *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). For these reasons, we decline to address Seck's claim for the first time on appeal.

Convictions affirmed, sentence vacated, and case remanded with directions.