IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,316

STATE OF KANSAS,
*Appellee*,

v.

EBONY NGUYEN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Interpretation of the revised Kansas Sentencing Guidelines Act, K.S.A. 2015 Supp. 21-6801 *et seq*., is a question of law subject to unlimited review.

2.

K.S.A. 2015 Supp. 21-6806(c) does not give district courts discretion to depart from a life sentence for felony murder.

3.

In this case, the district court did not err in denying the defendant's motion for a downward durational departure from a sentence of life imprisonment for a felony-murder conviction.

Appeal from Sedgwick District Court; JOSEPH BRIBIESCA, judge. Opinion filed May 20, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

1

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Mark Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.:  Ebony R. Nguyen appeals the district court's denial of her motion for a downward durational departure of her life sentence for felony murder. Because the district court had no discretion to depart, we reject Nguyen's arguments and affirm.

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed. Nguyen unwittingly received counterfeit money from Jordan Turner in exchange for her marijuana. Upon discovering the deception and with the assistance of three others, Nguyen retaliated by luring Turner to a secluded location where he was shot and killed. With kidnapping serving as the underlying felony, Nguyen pled no contest to one count of felony murder under K.S.A. 2012 Supp. 21-5402(a)(2).

Before Nguyen was sentenced, she filed a motion for durational departure from a life sentence and sought a sanction of between 147 to 165 months in prison. At the hearing on the motion the district court stated it had no discretion to depart from the life sentence but, if so, it would not have granted departure:

"Well, I'll say for the record that in my opinion, the Court doesn't have discretion. This is an off-grid offense, and it calls for a life sentence.

"Now, on appeal, if the appellate court were to disagree with that, my position, for purposes of the record, is that I would be unable to find substantial and compelling reasons to depart. Miss Nguyen was the driving force behind the shooting in this case, and under those circumstances, it would be wholly inappropriate for the Court to depart,

2

so if the Court did have the discretion to consider the motion to depart, the Court would
deny the motion."

Accordingly, the court denied Nguyen's motion and imposed a life sentence with
parole eligibility after 20 years. See K.S.A. 2015 Supp. 22-3717. Nguyen timely appealed
her sentence.

Our jurisdiction is proper under K.S.A. 2015 Supp. 22-3601(b)(3), (4) (maximum
sentence of life imprisonment imposed for an off-grid crime).

More facts will be added as necessary to the analysis.

ANALYSIS

Issue: *The district court did not err in concluding that K.S.A. 2015 Supp. 21-6806(c)*
*does not authorize a district court to depart from a life sentence for felony murder.*

Nguyen argues that because K.S.A. 2015 Supp. 21-6806(c) is silent on durational
departures for off-grid crimes, sentencing courts have discretion to grant them—at least
for felony murder. She specifically contends this court implicitly acknowledged such
discretion to depart from a life sentence for felony murder in *State v. Gleason*, 277 Kan.
624, 88 P.3d 218 (2004). The State basically counters that the statute's language reveals
the intent of the legislature is to prohibit durational departures from sentences for off-grid
crimes like felony murder.

Nguyen further argues that once we have agreed the district court had departure
discretion, several factors warrant the court's exercise of that discretion to reduce her
sentence: her lack of criminal history, her limited role in the murder, and her age and

3

lack of maturity. But because we reject Nguyen's first argument, we do not reach her second one.

*Standard of review*

Whether the district court has discretion to grant a durational departure from a felony-murder life sentence requires interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2015 Supp. 21-6801 *et seq.*, a question of law subject to unlimited review. *State v. Luarks*, 302 Kan. 972, 976, 360 P.3d 418 (2015) (citing *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 [2015]).

In exercising our unlimited review, we acknowledge that "'[t]he fundamental rule to which all other rules are subordinate is that the intent of the legislature governs if that intent can be ascertained.'" *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). A statute's language is our paramount consideration because ""the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used."'" *State v. Looney*, 299 Kan. 903, 906, 327 P.3d 425 (2014) (citing *Gannon v. State*, 298 Kan. 1107, 1143, 319 P.3d 1196 [2014] [quoting *Wright v. Noell*, 16 Kan. 601, 607, 1876 WL 1081 (1876)]). "When statutory language is plain and unambiguous, there is no need to resort to statutory construction. An appellate court merely interprets the language as it appears; it is not free to speculate and cannot read into the statute language not readily found there." *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016).

When legislative intent cannot be derived from the plain language of the statute, this court may look to legislative history or employ other methods of statutory construction. *State v. Holt*, 298 Kan. 469, 474, 313 P.3d 826 (2013).

*Discussion*

We start our analysis by acknowledging that K.S.A. 2015 Supp. 21-6806(c) establishes the sentencing for certain off-grid crimes, including felony murder under K.S.A. 2012 Supp. 21-5402(a)(2). The sentencing statute provides:

> "Violations of K.S.A. 2015 Supp. 21-5401, *21-5402*, 21-5421, 21-5422 and 21-5901, and amendments thereto, *are off-grid crimes for the purpose of sentencing*. Except as otherwise provided by K.S.A. 2015 Supp. 21-6617, 21-6618, 21-6619, 21-6622, 21-6624, 21-6625, 21-6628, and 21-6629, and amendments thereto, *the sentence shall be imprisonment for life* and shall not be subject to statutory provisions for suspended sentence, community service or probation." (Emphasis added.) K.S.A. 2015 Supp. 21-6806(c).

We next note that the exceptions listed in K.S.A. 2015 Supp. 21-6806(c)—K.S.A. 2015 Supp. 21-6617, 21-6618, 21-6619, 21-6622, 21-6624, 21-6625, 21-6628 and 21-6629—do not provide any exceptions to a life sentence for felony murder. These statutes primarily provide a sentencing scheme for capital murder.

Nguyen argues this court essentially interpreted this language in a predecessor statute—K.S.A. 21-4706(c)—to answer this departure question in *State v. Gleason*, 277 Kan. 624. There, the district court denied the defendant's request for a durational departure on his conviction of felony murder and sentenced him to life imprisonment with no possibility of parole for 20 years. We held that the defendant was not entitled to a reduced sentence despite the lighter sentences his codefendants received as part of their plea bargains in which they pled guilty to less serious offenses. 277 Kan. at 656. Nguyen argues that by reviewing the issue of departure from a life sentence in *Gleason*, this court implicitly acknowledged the district court had discretion to consider a departure.

5

But Nguyen's reliance on *Gleason* is misplaced. The issue before this court concerned whether the district court was required to compare defendant's sentence to the lesser sentences of his codefendants, not whether the sentencing statute allowed for durational departure. 277 Kan. at 656. So, we reject Nguyen's argument that in *Gleason* we implicitly acknowledged a district court's discretion to depart from a life sentence for felony murder.

Moreover, since *Gleason* we twice have expressly stated that the life sentence for felony murder is mandatory. Four years after *Gleason* we stated: "[T]he district court imposed a *mandatory* life sentence for the felony murder" and declared: "The sentence imposed for [the defendant's] felony murder, a *mandatory* life sentence, conforms to the statutory provisions." (Emphasis added.) *State v. Heath*, 285 Kan. 1018, 1019, 179 P.3d 403 (2008). In *Heath* we cited the previous, substantially similar felony-murder sentencing statute in effect at the time, K.S.A. 21-4706(c), which provided in relevant part: "Violations of K.S.A. 21-3401 [(b) is felony murder] . . . are off-grid crimes for the purpose of sentencing. . . . [T]*he sentence shall be imprisonment for life and shall not be subject to statutory provisions for suspended sentence, community service or probation*." (Emphasis added.)

Six years after *Heath* we similarly pronounced in *State v. Brown*, 300 Kan. 542, 562-63, 331 P.3d 781 (2014):

> "A person convicted of felony murder is subject to a *mandatory* sentence of life imprisonment. See K.S.A. 21-4706(c). A person serving a life sentence for a felony murder committed after July 1, 1999, becomes parole eligible after 20 years of confinement. K.S.A. 22-3717(b)(2)." (Emphasis added.)

6

These declarations are consistent with the plain language of K.S.A. 2015 Supp. 21-6806(c)—and its predecessor K.S.A. 21-4706(c)—which provides that a sentence for felony murder "*shall* be imprisonment for life." (Emphasis added.) See also *State v. Brown*, 303 Kan. 995, 1006, ___ P.3d ___, (March 11, 2016) (describing K.S.A. 2014 Supp. 21-6806[c] as an example of "mandatory life sentences assigned by the legislature for off-grid crimes").

Despite the foregoing, in none of these decisions did we expressly analyze this particular statutory phrase—"the sentence shall be imprisonment for life"—with the language that immediately follows it: "and shall not be subject to statutory provisions for suspended sentence, community service or probation." K.S.A. 2015 Supp. 21-6806(c). Not surprisingly, Nguyen and the State differ on the meaning and possible significance of this language and whether it introduces ambiguity into the statute.

Nguyen argues that by listing "suspended sentence, community service or probation" the legislature merely prohibited them and any similar unlisted dispositional departures but did not prohibit the *durational* departure she requested. The State responds this language shows that the intent of the legislature was to disallow any departures.

To assist our analysis, we observe that after Nguyen committed her crime in March 2013, the legislature added language to another statute to specifically govern felony-murder sentences. Although the amendment to the statute applies to felony murders committed after July 1, 2014, it is of guidance in determining the legislative intent in K.S.A. 21-6806(c). *Cf. Brown*, 303 Kan. at 1006 (court does not interpret statutes in isolation but considers provisions of an act *in pari materia* with view to reconciling, bringing provisions into workable harmony) (citing *State v. Hobbs*, 301 Kan. 203, 210-11, 340 P.3d 1179 [2015]).

7

The amendment to that statute, K.S.A. 2015 Supp. 21-6620, provides in relevant part:

"[A] defendant convicted of murder in the first degree as described in subsection (a)(2) [felony murder] of K.S.A. 2015 Supp. 21-5402, and amendments thereto, shall be sentenced to imprisonment for life and shall not be eligible for probation or suspension, *modification or reduction of sentence.* In addition, the defendant shall not be eligible for parole prior to serving 25 years' imprisonment, and such 25 years' imprisonment shall not be reduced by the application of good time credits. *No other sentence shall be permitted.*" (Emphasis added.) K.S.A. 2015 Supp. 21-6620(b)(1).

When, as here, language has been added to an existing statute, the issue often becomes whether the new language is meant to constitute substantive legislative changes or simply to codify prior caselaw, *e.g.*, to clarify. See *Stueckemann v. City of Basehor*, 301 Kan. 718, 745, 348 P.3d 526 (2015) (distinguishing substantive legislative changes from mere codification of prior caselaw); see also *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458, 264 P.3d 102 (2011) ("When an original statute is ambiguous, the legislative purpose may be to clarify the statute's ambiguities, not to change the law."); *Estate of Soupene v. Lignitz*, 265 Kan. 217, 222, 960 P.2d 205 (1998) (amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act).

Faced with our decisions in *Heath* in 2008 and *Brown* in 2014, the legislature could have chosen to change this caselaw. In other words, it could have chosen to make substantive changes in K.S.A. 2015 Supp. 21-6806 and clearly establish that the life sentence for felony murder was not mandatory—*i.e.*, durational departures were permitted. But the legislature did not do so. See *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008) (when legislature does not modify statute to avoid a standing judicial construction of that statute, the legislature is presumed to agree with that

8

judicial construction). Instead, it chose to address the subject of felony-murder sentences in K.S.A. 2015 Supp. 21-6620, and the statute's amended language certainly cannot be said to override *Heath* and *Brown*. The amendment provides that defendant "shall not be eligible for . . . modification or reduction of sentence" and "the defendant shall not be eligible for parole prior to serving 25 years' imprisonment, and such 25 years' imprisonment shall not be reduced by the application of good time credits. No other sentence shall be permitted." K.S.A. 2015 Supp. 21-6620(b)(1).

Indeed, the legislature chose the opposite approach to substantive change. By including disqualifying language far beyond the concepts of probation and suspension in 21-6620, the legislature essentially only codified the caselaw. We therefore conclude that these additions are merely meant to clarify the legislative intent:  the mandatory sentence for felony murder is life imprisonment.

The State makes additional arguments that we conclude support the holding that a life sentence is mandatory for felony murder, *i.e.*, no departures are permitted. The State first notes that the general sentencing statute for on-grid crimes, K.S.A. 2015 Supp. 21-6815, contains language specifically authorizing departures. Subsection (a) provides in relevant part:  "[T]he sentencing judge *shall* impose the presumptive sentence provided by the sentencing guidelines *unless the judge finds substantial and compelling reasons to impose a departure sentence*." (Emphasis added.) Subsections (c)(1) and (2) then provide the nonexclusive lists of mitigating and aggravating factors which may be considered by the judge in determining whether substantial and compelling reasons for a departure exist.

The State next observes that while mandatory life sentences for some types of off-grid crimes can nevertheless be eligible for departure, their empowering statutes are explicit in their departure authorization. It points to the statute controlling Jessica's Law

9

sentencing, K.S.A. 2015 Supp. 21-6627, which provides for a mandatory minimum of imprisonment for certain offenders. Jessica's Law, like K.S.A. 2015 Supp. 21-6806(c), generally prohibits departures for its off-grid crimes. And it specifically includes language echoing that of K.S.A. 2015 Supp. 21-6620(b)(1):

> "When a person is sentenced pursuant to subsection (a) or (b), such person *shall be sentenced to a mandatory minimum term of imprisonment of not less than 25 years*, 40 years or be sentenced as determined in subsection (a)(2) or subsection (b)(2), whichever is applicable, and *shall not be eligible for probation or suspension, modification or reduction of sentence*. In addition, a person sentenced pursuant to this section *shall not* be eligible for parole prior to serving such mandatory term of imprisonment, and such imprisonment shall not be reduced by the application of good time credits." (Emphasis added.) K.S.A. 2015 Supp. 21-6627(c).

But unlike K.S.A. 2015 Supp. 21-6806(c), after establishing a mandatory minimum term of imprisonment (not less than 25 years), Jessica's Law goes on to expressly authorize, and provide a procedure for, departing from this mandatory sentence: "[T]he sentencing judge *shall* impose the mandatory minimum term of imprisonment provided by subsection (a), *unless* the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." (Emphasis added.) K.S.A. 2015 Supp. 21-6627(d)(1); see also *State v. Spencer*, 291 Kan. 796, 803, 248 P.3d 256 (2011).

Building on the State's argument, we also doubt that the legislature intended for the crimes it identified in the first sentence of K.S.A. 2015 Supp. 21-6806(c)—21-5401 (capital murder); 21-5402 (first-degree murder); 21-5421 (terrorism); 21-5422 (illegal use of weapons of mass destruction); and 21-5901 (treason)—to be eligible for a durational departure from a life sentence. Our skepticism is particularly valid when the legislature has failed to provide any guidance to the sentencing court on when and how to depart

10

from these most serious crimes. Compare K.S.A. 2015 Supp. 21-6627(d)(1) (Jessica's Law sentencing statute provides guidance on how and when to depart) and 21-6815 (general departure statute for presumptive sentences provides guidance on how and when to depart). These two statutes further demonstrate that had the legislature intended to allow departures from a mandatory life sentence for felony murder, it clearly knew how to enact such provisions. Accordingly, we hold that by failing to provide an exception for felony murder, the legislature intended to prevent departures from the mandatory life sentence. See *State v. Looney*, 299 Kan. at 906 (The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained.).

As a result, we hold that K.S.A. 2015 Supp. 21-6806(c) does not give district courts discretion to depart from a life sentence for felony murder. Given this holding, we need not consider the merits of Nguyen's motion for downward durational departure.

The decision of the district court is affirmed.