NOT DESIGNATED FOR PUBLICATION

No. 129,016

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TREVOR LEE CARL HUGHES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed in part and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant deputy district attorney, *Mike Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Trevor Lee Carl Hughes timely appeals the revocation of his probation, claiming the district court lacked jurisdiction to revoke his probation because it revoked solely on grounds alleged in the State's amended motion to revoke probation filed after his original term of probation had expired. Hughes also argues he is entitled to additional jail credit. After a thorough review of the record, we find the district court properly exercised its discretion to revoke Hughes' probation. But we find we must remand for the district court to determine what jail credit, if any, he is entitled to, given

the recent decisions from our Supreme Court. Therefore, we affirm in part and remand for the district court to calculate any jail credit to which Hughes may be entitled.

FACTUAL AND PROCEDURAL BACKGROUND

Hughes pled guilty to one count each of arson and burglary for acts committed in May 2020. In February 2022, the district court sentenced Hughes to a total prison term of 49 months' imprisonment but granted a dispositional departure to 24 months' probation.

Hughes' probation did not proceed as the court hoped for. In July 2022, the State filed a motion for an order to show cause why probation should not be revoked for failure to report and failure to provide a current address. The district court issued a warrant a few days later. In December 2022, Hughes was taken into custody in Johnson County, where he pled guilty to a new crime of aggravated battery. Hughes remained in custody until February 2025.

While in custody in Johnson County, Hughes filed a request for disposition of detainer in this case requesting the State either dismiss the probation revocation or proceed to a hearing. Shortly after Hughes requested a disposition of detainer, the probation violation warrant was executed, and the State filed an amended motion to revoke probation alleging Hughes failed to report, failed to provide a current address, and committed a new crime.

On May 2, 2024, the district court held a show cause hearing in which Hughes withdrew his request for disposition of detainer and asked the district court to allow him to serve his Johnson County sentence before addressing the probation violations. The district court allowed Hughes to withdraw his motion and ultimately held a show cause hearing on the probation violations in March 2025.

2

At the show cause hearing, Hughes' intensive supervision officer (ISO) testified that Hughes failed to report in June 2022 and could not be found. Hughes' ISO did not know about the new crime in Johnson County until searching a database looking for Hughes. Hughes also testified and admitted he had stopped reporting to probation and committed a new crime of aggravated battery.

The district court revoked Hughes' probation and imposed his underlying prison sentence of 49 months. The district court explained it had already given Hughes a second chance by suspending his prison sentence and granting him a dispositional departure to probation. The journal entry explained that Hughes' probation was revoked for failure to report and provide a current address, but the district court did not specifically rely on these allegations in revoking Hughes' probation. Additional facts are set forth as necessary.

ANALYSIS

*Probation violation*

Hughes argues the State unreasonably delayed prosecuting his probation violations and the district court lacked subject matter jurisdiction to revoke his probation. Hughes asks us to vacate the revocation of his probation and the imposition of his underlying prison sentence.

*Preservation and standard of review*

Hughes acknowledges he failed to raise the issue below and asks us to address the issue for the first time on appeal because it involves a purely legal question arising on proved or admitted facts and is determinative of the case, and consideration of the claim is necessary to serve the ends of justice or to prevent a denial of fundamental rights. See

3

*State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Hughes primarily argues the district court lacked subject matter jurisdiction, which can be raised for the first time on appeal. See *State v. Clark*, 313 Kan. 556, 560, 486 P.3d 591 (2021). We have unlimited review of issues related to statutory interpretation and subject matter jurisdiction. *State v. Perry*, 318 Kan. 374, 378-79, 543 P.3d 1135 (2024).

*Subject matter jurisdiction*

At any time while a defendant is serving probation for a crime committed after July 1, 1993, the district court may issue a warrant for the defendant's arrest for violating any of the conditions of probation. K.S.A. 22-3716(a). The district court has a 30-day grace period after the defendant's probationary term expires to issue a probation violation warrant. K.S.A. 22-3716(e).

Here, the district court placed Hughes on 24 months' probation on February 22, 2022. About five months later, in July 2022, the State moved to revoke Hughes' probation for failure to report and failure to provide a current address. The district court ordered Hughes to show cause why his probation should not be revoked and issued a warrant. Hughes' probationary term expired in February 2024. There was no activity on Hughes' case until April 3, 2024, when Hughes filed a request for disposition of detainer from the Kansas Department of Corrections. The probation violation warrant was then served on Hughes on April 22, 2024. Three days later, the State filed an amended motion to revoke Hughes' probation based on the two original allegations, as well as a new claim Hughes committed a new crime in Johnson County in December 2022.

The district court revoked Hughes' probation based solely on the new crime—an allegation asserted only in the State's amended motion to revoke. The district court noted other probation violations in the journal entry but did not discuss those violations at the revocation hearing. Hughes acknowledges the district court issued a timely warrant while

4

he was on probation but claims the State's amended motion to revoke probation—filed 21 months after the warrant was issued—was untimely. And, during those 21 months, the State never pursued its original motion. Hughes specifically claims the State failed to amend its motion when the new crime was committed or when he was convicted—both of which happened during his probationary term.

Once a timely warrant has been issued, the State may amend its request to revoke probation after the probationary period only if (1) the amendment(s) "could not reasonably have been known when a timely filing is made"; (2) "there is no unnecessary delay before the filing of the amended allegations"; and (3) "the actual revocation hearing is promptly held." *State v. Williams*, 20 Kan. App. 2d 142, 150, 884 P.2d 743 (1994). Hughes asks us to reconsider the *Williams* panel's holding or, in the alternative, find the State's amended motion to show cause why probation should not be revoked was made after an unreasonable delay.

Hughes concedes the State could not have reasonably known about the new crime committed in December 2022 when it filed its motion to revoke probation in July 2022. And Hughes does not challenge whether the actual revocation hearing was promptly held. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) ("Issues not briefed or not adequately briefed are deemed waived or abandoned."). The sole issue on appeal is whether the State's amended motion to revoke probation was unnecessarily delayed. Hughes directs our attention to *Pabst v. State*, 287 Kan. 1, 192 P.3d 630 (2008), to support his position the State's amended motion to revoke should not relate back to its original motion. But *Pabst* dealt with a K.S.A. 60-1507 motion. *Williams* provides better guidance as it specifically addressed an amended motion to revoke probation.

"What constitutes unnecessary delay depends upon the facts and circumstances of each case." *Toman v. State*, 213 Kan. 857, 860, 518 P.2d 501 (1974). In *Williams*, the State timely moved to revoke Williams' probation and, after Williams' probationary term

expired, filed an amended motion to revoke based on a new crime of conviction. The State did not dispute it knew of the new conviction when it filed its initial timely motion to revoke probation. The district court revoked Williams' probation on the grounds alleged in the amended motion.

The *Williams* panel found "a clear violation of the reasonableness test," as the amended motion was filed more than 9 months after the timely motion and nothing was done in the 18 months between the State's amended motion and Williams' request for discharge. 20 Kan. App. 2d at 151. But the *Williams* panel explained it was "not prepared to adopt any bright line rule of reasonableness or timeliness [of filing an amended motion] because the facts may vary from case to case." 20 Kan. App. 2d at 151.

In *State v. Johnson*, No. 128,186, 2025 WL 3046405 (Kan. App. 2025) (unpublished opinion), *rev. denied* 322 Kan. ___ (April 30, 2026), the State timely filed its first motion to revoke probation while Johnson was still serving his probationary term. Johnson then committed a new crime while on probation, and the State filed an amended motion to revoke. But the State did not file the amended motion until after Johnson's probationary term expired. The district court held a hearing on the amended motion to revoke and noted the State had included only the sentencing date of the new crime and not the date the new crime was committed. The State filed a second amended motion to revoke including the date the crime was committed, confirming the new crime was committed while Johnson was on probation and after the State had filed its original motion.

The *Johnson* panel addressed the reasonableness of amended allegations as set forth in *Williams* and confirmed:

"[T]he *Williams* court correctly interpreted the language in K.S.A. 22-3716, and the holding in *Williams* is still good law. We also observe that the Kansas Legislature has not

6

substantially amended the procedure for revoking a defendant's probation since *Williams* was decided, although the statute has been substantially amended over the years to include requirements for intermediate sanctions. See, e.g., L. 2013, ch. 76, § 5. When the Legislature fails to modify a statute to avoid a standing judicial construction of the statute, courts presume the Legislature agreed with the judicial construction. *State v. Nguyen*, 304 Kan. 420, 425-26, 372 P.3d 1142 (2016)." *Johnson*, 2025 WL 3046405, at *4.

The *Johnson* panel noted the State's amended motions were filed over one year after Johnson committed the new crime but found Johnson suffered no prejudice from the State's delay in filing because he was imprisoned during that time. Johnson's revocation hearing was promptly held within one month of the State filing its first amended motion. The panel found the district court had jurisdiction to revoke Johnson's probation on the grounds alleged in the State's amended motions. 2025 WL 3046405, at *5.

The facts in *Johnson* are like the facts here. It is undisputed the State's original motion to revoke probation based on technical violations was timely filed while Hughes was still on probation. The district court issued a warrant to address the alleged probation violations, but Hughes committed a new crime, and the warrant was not served until April 2024—after Hughes filed a request for disposition of detainer. The State filed an amended motion to revoke Hughes' probation on the grounds he committed a new crime. The amended motion was filed after Hughes' probationary term expired. Hughes suffered no prejudice from the State's delay in filing the amended motion because he was imprisoned during that time.

The district court had jurisdiction to revoke Hughes' probation on the grounds alleged in the State's amended motion.

7

*Jail credit*

Hughes claims the district court erred in granting him only 22 days of jail time credit from April 22, 2024—when the probation violation warrant was executed and he was transported to the Shawnee County jail—to May 14, 2024, when he was returned from the Shawnee County jail to the Kansas Department of Corrections. Hughes argues he is entitled to jail credit for every day he was in custody pending disposition of this case—beginning either July 15, 2022, when the probation violation warrant was issued, or April 22, 2024, when the warrant was executed—to March 26, 2025, when the district court revoked his probation.

*Preservation and standard of review*

Hughes admits he failed to challenge his jail credit award before the district court but asserts he is entitled to the recent changes in the law under *State v. Ervin*, 320 Kan. 287, 566 P.3d 481 (2025)—decided after his probation was revoked and while his appeal was pending. Hughes asks us to remand to the district court with orders to amend the journal entry to award jail credit for all time spent in custody pending disposition of this case.

The right to jail time credit is statutory, and we have unlimited review over questions of statutory interpretation. *Perry*, 318 Kan. at 378. Generally, "an appellate court will not address an issue raised for the first time on appeal, although there are limited exceptions to that rule." *State v. Allen*, 314 Kan. 280, 281, 497 P.3d 566 (2021). We are not obligated to consider an unpreserved claim even if the claim meets an exception to the general rule. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (decision to review unpreserved claim is prudential, not mandatory).

8

Hughes claims we can review the issue for the first time on appeal because it involves a question of law on admitted facts. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). The State claims the issue is not purely a question of law as the factual circumstances are unclear surrounding Hughes' arrest for the new crime committed while on probation.

In *Ervin*, our Supreme Court applied the same preservation exception Hughes invokes, as the jail credit issue involved a question of statutory interpretation—a question of law—presented on admitted facts. 320 Kan. at 306. While there may be some discrepancy as to what dates are at issue for calculating jail credit, the overarching question is one of law.

The State also acknowledges our Supreme Court decided *Ervin* while Hughes' appeal was pending but asserts jail credit issues have been extensively litigated since our Supreme Court's decision in *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023), and Hughes could have properly preserved the issue by raising it below. Contrary to the State's argument, Hughes had little opportunity to object to the district court's jail credit ruling as the district court never announced how much jail credit it would award him at the probation revocation hearing. The district court noted the jail credit award in the journal entry filed after the hearing.

Hughes does not make an illegal sentence claim on appeal, but the State addresses the uncertainty as to whether jail time credit issues fall under the parameters of an illegal sentence, which can be corrected at any time under K.S.A. 22-3504. See *State v. Romey*, 321 Kan. 400, 419, 580 P.3d 1 (2025). Another panel of our court considered a jail credit claim for the first time on appeal out of an abundance of caution to avoid the possibility of an illegal sentence. *State v. Elam*, No. 128,025, 2026 WL 787868, at *10 (Kan. App. 2026) (unpublished opinion), *petition for rev. filed* April 7, 2026. We will review Hughes' jail credit claim for the first time on appeal based on Hughes' inability to lodge a jail

credit objection at the probation revocation hearing, the exception to the preservation rule, and the developing caselaw following *Hopkins* and *Ervin*.

*Calculation of jail time credit*

The jail credit statute in effect at the time Hughes committed his crimes, K.S.A. 2019 Supp. 21-6615(a), stated in relevant part:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

Following *Hopkins*, the *Ervin* court interpreted the relevant version of K.S.A. 21-6615(a), before it was amended in 2024, and found the statute "required a district court to award an allowance for all time spent incarcerated 'pending the disposition of the defendant's case.'" *Ervin*, 320 Kan. at 311. Our Supreme Court further explained the language of the statute "required the district judge to award one day of credit for each day that [the defendant] was incarcerated pending disposition of [a criminal] case regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12.

*Ervin* became binding precedent while Hughes' appeal was pending. See *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013). As a result, *Ervin* now controls similar jail time credit cases regardless of the absurd results benefiting defendants serving consecutive sentences. Our Supreme Court seemingly agreed the results are absurd but

10

shifted criticism to the Legislature for failing "'to appreciate the effect of certain provisions'" in drafting legislation. *State v. Zongker*, 322 Kan. 137, 140, 586 P.3d 769 (2026). Our Supreme Court explained: "An absurd result 'may be a perfectly valid reason for choosing one textually permissible interpretation over another but it is no basis for disregarding or changing the text.'" 322 Kan. at 140. Despite the fact *Ervin* essentially does away with the consecutive-sentencing scheme in many cases, we are duty-bound to follow Supreme Court precedent unless there is some indication of a departure. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022).

Hughes incidentally argues he should receive jail credit from the time the district court issued the probation violation warrant in July 2022 until final disposition in March 2025 when his probation was revoked. "A point raised incidentally in a brief but not argued is . . . deemed abandoned." *Meggerson*, 312 Kan. at 246. Even if this argument was not waived and abandoned, Hughes would not be entitled to jail credit until the probation violation warrant was served on him as he was not in custody pending disposition of this case until that time. See *State v. Hill*, 66 Kan. App. 2d 177, 180, 577 P.3d 670 (2025) ("[I]t would be inappropriate to expand [*Ervin*'s] holding in an attempt to justify an award of jail time credit for a subsequent incarceration after a defendant posts bond, is released from jail, and remains on bond until sentencing in the case for which the defendant is seeking additional credit."), *rev. granted* 321 Kan. 792 (2026). In other words, had Hughes not been incarcerated for another crime, he would not have been in custody pending disposition of this case until the probation violation warrant was served on him.

Hughes also points out the Kansas Department of Corrections website shows he was released on postrelease supervision on February 18, 2025, before the district court revoked his probation. Hughes is not entitled to jail credit for time he is released from custody. See 66 Kan. App. 2d at 180.

11

Under *Hopkins* and *Ervin*, Hughes is entitled to jail time credit from the date the probation violation warrant was served on him on April 22, 2024, to the date he was either released on postrelease supervision or the date his probation was revoked—if he spent time in custody between being released onto postrelease supervision and having his probation revoked. We affirm the revocation of Hughes' probation and remand to the district court for it to determine the amount of jail credit Hughes is entitled to under *Hopkins* and *Ervin*.

Affirmed in part and remanded with directions.